STATE of Missouri ex rel. REORGANIZED SCHOOL DISTRICT R–9 OF GRUNDY COUNTY, Missouri, Appellant,

v.

Ted WINDES et al., Respondents,

Reorganized School District R–6 of Grundy County, Missouri, Intervenor.

No. 58233.

Supreme Court of Missouri, Division No. 1.

Sept. 9, 1974.

Pickett, Andereck, Hauck & Sharp, by Marvin L. Sharp, Trenton, for appellant.

Sapp, Woods, Dannov & Orr, by Carl F. Sapp, Columbia, for respondent-intervenor.

HIGGINS, Commissioner.

Appeal by relator, Reorganized School District R–9 of Grundy County, Missouri, from order and judgment sustaining motion for judgment for intervenor, Reorganized School District R–6 of Grundy County, Missouri, quashing writ of certiorari issued upon petition of relator and affirming award of respondent Board of Arbitration, asserting presence of questions involving construction of the Constitutions of the United States and of this state.

On November 3, 1970, the City of Trenton, Missouri, by an election, extended its city limits to include part of Reorganized School District R–6 of Grundy County, Missouri. Section 162.421, RSMo 1969, V.A.M.S., provides that such extension "shall automatically extend the boundaries" of the school district of that city, Reorganized School District R–9 of Grundy County, Missouri, to include the annexed area. Section 162.031 provides:

"Whenever * * * any part of any school district is annexed to any other district * * *, the board of the school district from which land has been taken and the school board of the district to which land has been annexed, * * * shall make a just and proper adjustment and apportionment of all school property, real and personal, including moneys and a like apportionment of indebtedness, if any, to and among the school districts. * * * In making the adjustment and apportionment * * *, the assessed value of land acquired by or taken from the districts, as compared with the assessed value of the other land in the districts, as well as the value of the school grounds, together with the buildings thereon, and the furniture and equipment therein, and any other school property in the districts, shall be taken into consideration in determining the amount, if any, that shall be paid by one district to another, or in apportioning the indebtedness, if any, that shall be assumed and paid by any of the districts."

The school boards of the R–9 and R–6 Districts were unable to agree upon the adjustment and apportionment of property and indebtedness as provided in Section 162.031. Section 162.041 provides that when such disagreement occurs, "the board of either district may appeal to the state board of education, which shall appoint three persons as a board of arbitration to make an adjustment and apportionment of property and indebtedness in accordance with section 162.031. The board of arbitration shall proceed in the manner provided by section 162.691 but it may hold hearings after giving the affected districts reasonable notice thereof before making its award. * * * Any sum awarded by * * * a board of arbitration to any school district shall be a legal and valid claim in its favor and against the school district charged therewith. The amount of debt, if any, apportioned to any school district shall be a legal and valid claim against the school district charged therewith. * * * the claim or indebtedness charged against any school district may be collected in the same manner as other claims against a school district." Section 162.691, RSMo 1969 (repealed by Laws 1973, p. ——, H.B. No. 158, § 1, effective July 1, 1974), provided, at the time of this

controversy, that boards of arbitration in disagreements as to formation of a new district or boundary change "shall call a meeting of the board in some convenient place within ten days after the board is selected. * * * The decision * * * shall be rendered not more than thirty days after the matter is referred to the board. * * * The chairman of the board of arbitration shall within five days thereafter transmit the decision to the clerks of the various districts involved * * *."

Upon the failure to agree of the school boards of R–9 and R–6 Districts, the board of R–6 appealed to the state board of education for appointment of a board of arbitration to make the adjustment and apportionment of property; the state board appointed a board of arbitration consisting of Ted Windes, Lamar, Missouri, Marshall Pile, Albany, Missouri, and Ronald Schneider, Cosby, Missouri.

The board of arbitration, upon notice, conducted a hearing June 20, 1972, in Albany, Missouri. R–6 District was represented by counsel and its principal, and two members of its school board were also present; R–9 was represented by counsel, and its superintendent was also present.

Following the hearing, the board of arbitration made its award and transmitted it to both districts as follows:

"TO: Mr. Russell Joiner, President, Grundy County R–9 School District Mr. Larry Meservey, President, Grundy County R–6 School District

"FROM: Mr. Ted Windes, Chairman, Board of Arbitration

Mr. Marshall Pile, Board of Arbitration

Mr. Ronald Schneider, Board of Arbitration

"Exhibits one thru ten are a part of the records of these proceedings.

"The following judgements handed down by the Board of Arbitration are the results of a mature consideration of the evidence, suggestion, and the law. It is felt that a fair and just hearing, following due notice of the hearing, date and time, was given both parties involved. The said hearing took place on June 20, 1972 in Albany, Missouri in the assembly room of the Gentry County Bank. The hearing was opened at 9:30 a. m. and recessed at 11:45 a. m. Mr. Marshall Pile was appointed secretary for the hearing.

"The statement of the Board of Arbitration follows:

"Using section 162.031, part 2, of Missouri School Law, 1970 as our authority, $42,914.44 shall be awarded to the Grundy County R–6 district from the Grundy County R–9 to satisfy 26.1% of the bonded indebtedness of the R–6 district on November 3, 1970.

"In Exhibit 4, the Grundy County R–6 district stated a loss of income annually of local receipts of $37,764; state receipts of $55,966, county receipts of $9,107, free textbook fund receipts of $1,247; state assessed utilities receipts of $7,949 and federal receipts of $1,553 for a total annual loss of $114,513.

"Exhibit 4 also shows a reduction of operating cost of $53,793. It is the feeling of the Board of Arbitration that the loss of local receipts of $37,764 based on 26.-1% of the tax evaluation should not have been included in the total overall annual loss of $114,513. That a true figure of $76,749 loss of income should have been presented, based on a 50% reduction in average daily attendance. Therefore, subtracting from the total loss, a net reduction of $53,793 in operating costs leaves $22,956 loss to the Grundy County R–6 the first year after annexation. The Board of Arbitration awards $22,956 for a loss of approximately 50% of the students in average daily attendance in the Grundy County R–6 district the first year. It is the feeling of the Board, that the Board of Ar-

bitration was set up to resolve the problems of annexation between Grundy County R–9 and Grundy County R–6 as of November 3, 1970 and that these considerations were made due to the fact that the Grundy County R–9 district will have an increased income of approximately $55,000 per year from average daily attendance and taxes from the newly annexed territory. It is further felt that the Grundy County R–6 district will have a higher tax base per student and will continue to operate as a school system. The Board of Arbitration feels at the time of arbitration, a secondary value for the Grundy County R–6 building should not be taken into consideration.

"Total amount awarded to the Grundy County R–6 District to be $65,870.44."

The referenced exhibits were all submitted by R–6 and may be described as follows:

Exhibit 1—Letter of February 8, 1972, from counsel and school board of R–6 to state department of education requesting appointment of board of arbitration.

Exhibit 2—Xerox copies of Sections 162.031 and 162.041, RSMo 1969, V.A.M.S.

Exhibit 3—Xerox copy of Section 162.-691, RSMo 1969, V.A.M.S.

Exhibit 4—Board of Arbitration information sheet containing information submitted by Claude M. Eckert, principal, applicable to detached district R–6 due to the boundary change covering valuation of district prior to boundary change, loss of valuation and pupils, reduction in expenses and receipts, bus miles eliminated, rise in per pupil cost, fund balances, bonded indebtedness and payment schedule, and a 2½ page position paper showing how R–6 felt the adjustment and apportionment should be made.

Exhibit 5—Guidelines (6) For Board of Arbitration.

Exhibit 6—Opinion No. 362, Attorney General of Missouri, covering effective dates involved in an annexation of school territory.

Exhibit 7—Letter of February 18, 1972, from Bunten's Insurance & Real Estate to R–6 containing opinion of maximum secondary value of R–6 property.

Exhibit 8—Letter of February 17, 1972, from A. R. Hammett, realtor, "to whom it may concern," containing similar opinion.

Exhibit 9—Letter of February 8, 1972, from the County Clerk of Grundy County to R–6, containing amount of decrease in valuation of R–6 as a result of the annexation.

Exhibit 10—Statement of cost of educating students in annexed area.

On July 19, 1972, R–9 filed its petition for writ of certiorari naming the board of arbitration as respondents. On September 22, 1972, pursuant to its motion, R–6 was joined as an intervenor. The writ was ordered issued returnable October 4, 1972.

On October 4, 1972, the writ was returned by the board, together with its record; intervenor filed motion for judgment; and the cause was submitted on briefs and taken under advisement.

On December 19, 1972, the court entered the order and judgment from which this appeal is taken.

Appellant contends (I) the court erred in quashing the writ of certiorari and in affirming the award asserting the order and judgment to be contrary to law as shown on the face of the record and that the award was arbitrary and capricious because the record, including the award and exhibits, shows that the board abused and exceeded its authority and jurisdiction by failing to follow Sections 162.031 and 162.041, supra, in making the apportionment and award. Appellant argues that the record shows (a) the board did not consider the money assets of R–6 as required by law, (b) the board did not require R–6 to produce evidence of its personal property, (c) the award included not

only principal bonded indebtedness but also interest and did not specify when the award should be payable and, if payable now, then interest should not be owed because it had not accrued, (d) the board failed to specify the date the award is due and from what fund it should be paid, (e) that the award shows on its face that the board awarded $22,956 loss of income which it had no authority to do.

Appellant makes substantially the same assertions to argue (II) that the award was invalid and void for imposition of interest payment before payment of principal or interest is due, and in failing to specify the due date of the award or from what fund it is payable.

Most of the support for this argument is obtained by emphasizing the R–6 position as stated and computed in its Exhibit 4.

■■ A statement of the ground rules for consideration and review by certiorari of a board of arbitration award in a dispute between two school districts resolves most of the questions in this controversy. Such rules are well stated in State ex rel. Reorganized School District v. Robinson, 276 S.W.2d 235, 236–237 (Mo.App.1955): "Certiorari presents only questions of law on the record brought up by the return and does not permit consideration of issues of fact, [State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68, 73(12)], and evidence and exhibits, even though incorporated in the return, may not be considered unless they are properly a part of the record [State ex rel. St. Louis Union Trust Co. v. Neaf, 346 Mo. 86, 139 S.W.2d 958, 962–963(8–9)]. The chief purpose of certiorari being to confine an inferior tribunal within its jurisdictional limits * * *, the writ affords relief not only where the inferior tribunal is without jurisdiction but also where such tribunal abuses or acts in excess of its rightful jurisdiction. [State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 123 S.W.2d 20, 23 (3)]."

■■ The function of certiorari in this type dispute is further well described in 78 C.J.S. Schools and School Districts § 79, p. 809: "In the absence of statute providing therefor, no appeal lies from a determination or award made in proceedings for the apportionment of assets or liabilities of a school district * * * on its alteration, dissolution * * *. A writ of certiorari to the board or tribunal [which has made such an apportionment] brings up for review only the question of the jurisdiction of such tribunal and the regularity of its proceedings"; and in 78 C.J.S. § 76 p. 806: "A statute requiring certain matters or factors to be considered in making the apportionment is not exclusive, but other matters may be taken into account for the purpose of making an equitable apportionment. * * * The weight to be given the various factors is exclusively within the control of the board or tribunal making the apportionment."

Again, from State v. Robinson, supra, 276 S.W.2d l.c. 240: "Our courts have frequently announced and heartily approved the salutary and time-honored principle that school laws will be construed liberally to aid in effectuating their beneficent purpose, and that, since the administration of school matters usually rests in the hands of plain, honest and well-meaning citizens, not learned in the law, substantial rather than technical compliance with statutory provisions and requirements will suffice." And at page 241: "* * * 'if the certificate (judgment) of the arbitrators is not absolutely void on its face, or so indefinite and uncertain as not to show jurisdiction of the board, it will stand the test of a review on writ of certiorari.' * * * with * * * jurisdiction * * * conceded, the presumption of regularity and right acting should be indulged in the absence of any indication to the contrary * * *.'"

There is no question that an election was held extending the corporate limits of Trenton, Missouri, and that a part of R–6 School District thereby automatically became a part of the R–9 (Trenton) school

district; that in such circumstances Section 162.031, supra, requires an adjustment and apportionment of all school property by the school boards if they can agree and, if they cannot agree, then by a board of arbitration appointed by the state department of education if either district appeals to that body; that the R–9 and R–6 school boards failed to agree and R–6 appealed to the state department of education; that the department duly appointed a qualified board of arbitration which, after notice given to all parties in interest, met and accorded a hearing which, on this record, was open to the interested parties and their evidence, views, and suggestions; that after such hearing, the board, as a result of "mature consideration" of pertinent matters, made an award adjusting and apportioning property and indebtedness between the districts and directing R–9 to pay to R–6 the sum of $65,870.44.

■ This board was clothed with jurisdiction by its appointment pursuant to Section 162.041, supra. Its award shows that it determined only that which was required of it by statute. No appeal is provided from the award; certiorari presents only questions of law and it does not permit consideration and redetermination of fact questions.

Upon this record, jurisdiction and its exercise appear; compliance with statutory direction as to consideration of prescribed elements for consideration is both recited and apparent; consideration was given to the interests of both districts. In this condition, the record neither shows nor suggests support for appellant's assertions of proceedings beyond statutory authority, abuse of discretion, and arbitrary and capricious decision. Appellant's arguments, with their particular emphasis on the indebtedness and interest factors contained in Exhibit 4 prepared by R–6 district, suggest an attempt by appellant to secure an appeal and review and redetermination of the facts. Neither the circuit court nor this court is so authorized in this type of case. See State ex rel. Columbia School Dist. v. Thorp, 411 S.W.2d 851 (Mo.App. 1967), for a remarkably similar case with the same result.

Appellant contends (III) that Section 162.041, supra, is unconstitutional because "the procedure by which the Board of Arbitration was appointed, the hearing held and the award made, resulted in the property of the Appellant being taken without due process of law." In support, appellant asserts and argues that the statute does not provide: "(1) that the members of the Board of Arbitration, before hearing testimony, shall take and subscribe to an oath to faithfully and fairly hear the matter in controversy and to make a just award; (2) that the members of the Board of Arbitration shall have the power to issue subpoenas and compel the attendance of witnesses, and administer oaths; (3) whether an award may be made by the majority of the members of the Board of Arbitration or whether unanimous approval is required; (4) that the award must be in writing, subscribed by the members of the Board of Arbitration; (5) an award may be vacated in event of fraud, corruption or misconduct; (6) for an appeal from the award of the Board of Arbitration. All of these safeguards to insure that no property shall be taken without due process of law are provided for in Chapter 435, R.S.Mo. 1969—'Arbitration'—which applies where parties *voluntarily* agree to submit a controversy to arbitration. * * * Section 162.041 does not provide (1) for a hearing; (2) oral evidence [to] be taken only on oath; (3) right to call and examine witnesses; (4) right to cross-examine witnesses; (5) right to have a stenographic record made of any hearing; (6) right to take and use depositions; (7) right to have subpoenas issued for the attendance of witnesses; (8) right to present oral arguments or briefs; (9) right to have a judicial review of any award; (10) the Board of Arbitration shall keep a record of the proceedings. All of these safeguards to insure that no property shall be taken with-

out due process of law are provided for in Chapter 536, R.S.Mo.1969, 'Administrative Procedure and Review,' which applies to contested cases before an administrative agency."

■ Chapters 435 and 536, RSMo 1969, V.A.M.S. do not pertain to this type of hearing, State v. Robinson, supra, Reorganized School District v. John, 312 S.W. 2d 171 (Mo.App.1958); and there can be no question that the parties had notice, were accorded a hearing, and received a judgment. Neither is it shown beyond appellant's assertion that it was denied any right of subpoena, testimony under oath, cross-examination, rulings on hearsay; nor is it made to appear where appellant was harmed by any such denial, if so. The situation is akin to that of a school annexation case where one district is deprived of property by another's annexation. With respect to whether that situation deprives a school district of property without due process of law, it has been ruled that "the very wording of appellants' plea presupposes a notice, a hearing, and a judgment * * *. The deprivation would be the result of a correct or an erroneous judgment. If erroneous, the mistake follows process and does not constitute a denial of due process of law." State ex rel. Heppe v. Zilafro, 206 S.W.2d 496, 497 (Mo.1947). See also Davidson v. Hartford Life Ins. Co., 151 Mo.App. 561, 132 S.W. 291 (1910); Johnson v. American Cent. Life Ins. Co., 212 Mo.App. 290, 249 S.W. 115 (1922); Baxter v. Land Const. Co., 357 Mo. 58, 206 S.W.2d 325 (1947); Ex parte Williams, 345 Mo. 1121, 139 S.W.2d 485 (1940).

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.